...1949. Mr. Elkin, no need to change. Thank you. That was my question. I just have to... You can stay where you are, but your colleagues are regrouping. If you're ready, Mr. Elkin, please proceed. Thank you. So the district court again revised its claim construction opinion and its post-trial opinion in the Alvogen case. It acknowledged that Alvogen used both conduction and convection bottom drying, that's at page 7, with the red dragging along hot metal plates and drag bars, but found that the drying was not substantial. And it found the process as a whole conventional. It then held that Alvogen didn't infringe on that basis. So measured against the original disclaimer, these facts would have precluded a finding of non-infringement. There would be bottom drying, and therefore the product could not have been dried solely using conventional convection air drying from the top. And the bottom drying would have included conduction drying, and therefore would not have been accomplished using solely convection air drying from the top. Of course, the original articulation of the disclaimer didn't include any requirement of substantiality. It instead included the word solely. It had to do so, and it explained why in its opinion. It had to do so because of embodiments showing top and bottom air being used together. The Court also departed from its focus on rippling. So it found that Alvogen designed its process to avoid the rippling effect, but then found that avoiding rippling wouldn't alone render the technique unconventional. That's at 13. This was the touchstone in the claim construction opinion in the Alvogen case. It was treated, it was listed as being one factor, but there's no consideration given of that factor in the opinion. Instead, what was found was the entire process was conventional. The Court then examined the zone drying process Alvogen used, and I think this is very important. You'll see at page 14 of the appendix the Court's discussion of zone drying. And what it says is the patent's mention of multi-zone drying does not alone render a process that employs multi-zone drying unconventional. So, again, that's at 14. Now, this analysis makes no sense. The patent doesn't just mention zone drying. It describes it as another method of controlling the drying process and is producing the controlled drying effect of the present invention. And this is at appendix 348, column 32, lines 39 through 40, continuing with the present invention language at 63 through 64. It describes zone drying at length over two columns, 32 and 33, and states that it can be used to dry the film without surface skinning, which means rippling in this context. That's at 348, column 32, lines 49 through 50. And don't take my word for it being used interchangeably. I'm going to give you the sites for that. 343 is the appendix page, column 22, line 51, and then 344 at column 23, line 2. The 514 patent teaches that zone drying avoids the rippling effect by drying the film slowly at first and then more rapidly later on, what the 514 patent calls a stepped-up drying effect. That's at 348 in the appendix, column 32, lines 44 through 45. So it's not the case that zone drying was mentioned. This is described in the patent as a way to controllably dry film so as to maintain uniformity and avoid rippling. But the district court dismissed zone drying as conventional and therefore disclaimed because it found that zone dryers were conventional in 2001. That's at 14 of the appendix. But column 3 and column 28, they can't disclaim columns 32 and 33. That's a perversion of the exercise of looking at a patent as a whole and determining its meets and bounds. It can't possibly comport with a finding of disclaimer. Does that disclosure in 514 show that zone drying is unconventional? I'm sorry, Your Honor, does it show that it was unconventional? Does it show that zone drying is unconventional? I suppose that would be a way of looking at it. There isn't a definition in this patent of conventional or unconventional. For conventional, what we have is, and this is in column 3, a couple of times it refers to methods used, conventional drying methods generally use drying ovens, drying tunnels, and the like. The word unconventional is not distinguished from it. Instead, it's controlled drying methods. And we see in column 4, just bear with me one moment. In column 4, what we see in the second paragraph under summary of the invention is a further aspect of the present invention, methods of forming the films of this invention are provided by wet casting methods, and the next sentence refers to those wet casting methods. The film product is formed by combining a polymer and a polar solvent, forming the combination into a film and drying the film in a controlled manner. So that's the broad class, controlled manner of drying. And then it says, preferably, the film is dried initially only applying heat to the bottom side of the film. And that explains, is done to avoid disuniformity. So that's one type of controlled drying. But all of controlled drying is separate and apart from the conventional drying techniques. If you look at the language in column 32, it says another method of controlling involves zone drying. That sounds conventional. Did the court make a finding of fact? It said on the next page in the opinion that multi-zone dryers were conventional because known in 2001. So here we are. The patent clearly says controlled drying methods can be used. Okay? We would argue nowhere does it say you can't use conventional methods, but how do we read a patent that's recommending, that's touting controlled drying methods over multiple columns as somehow those are of no moment or disclaimed by an earlier column in the patent? There's nothing like that in the law of disclaiming. We even see a couple of columns earlier a reference to a different drying method that was spelled out in a patent to Magoon 14 years before. Let me find a place for this. It's at column 32. It's right above the zone drying. So it can't be that conventional means known or unknown. Instead, what a careful reading of the patent shows is there is some criticism of conventional techniques that don't control the parameters. And the patent over more than 30 columns describes those parameters, how to control them. It talks about the best way to mix, the best way to cast the film. It talks about controlling the thickness of the film. So all of that is expressly against the idea of there being any disclaimer here. I think an extraordinary thing when you look back at the PI opinion, I think it's on page 14 of the slip opinion, you'll see a bunch of black quotes of things that purportedly support a disclaimer. In most of those, it says things like preferably, normally, tends to. One of those preferably references was the one to bottom drying that I just walked you through in column four. None of that's consistent with the finding of disclaimer. The Simon case, for example, the disclaimer was largely based on a statement saying that all embodiments disclosed or contemplated herein will have a particular structure. The structure appears in drawing in the patent. We don't have anything like that here. The words present invention are used to describe all kinds of things, claimed and unclaimed. There are abundant descriptions of processes, including those purportedly disclaimed in a permissive way. None of this is consistent with the finding of disclaimer, and no finding of disclaimer could possibly embrace zone drying. It just doesn't ring true or hold together well. I talked before about the columns at war with each other, which I think is essentially the version of disclaimer that's posited here about zone drying, that certain columns trump the zone drying descriptions or the Magoon description. Something that I was struck by when I was looking at Alvigin's brief is they say they came upon their process, they changed their process after the DRL claim construction. And again, I would ask, why are sophisticated repeat litigants who are involved in litigation on a patent finding after a claim construction ruling that there was a clear and unmistakable disclaimer that was always present? This doesn't make sense. It doesn't hold true. This is no different. And I understand that the district court clearly struggled with articulating the scope of the disclaimer. But this is the same as having a claim construction that changes with each iteration to match an accused product. It can't be the case that we have a disclaimer of uncertain scope that yields non-infringement defenses time and again. Do your honors have further questions about the specification, the prosecution history? Let's hear from the other side and we'll save you a little time. Mr. Sklar. Thank you, Your Honor. May it please the court. The inventors clearly and unmistakably disclaimed films that are dried using solely conventional convection air drying from the top. The district court properly construed the asserted claims to give meaning to this disclaimer. After weighing competing testimony presented during a full trial on the merits, the district court correctly determined as a factual matter that Elvigin dries its films using a solely conventional convection air drying from the top process. This is precisely what the 514 patent disclaims. Indivier has not shown clear error in this finding. In sum, the district court's judgment should be affirmed in all respects. Let's turn first to the claim construction issue. The specification repeatedly disparages conventional convection air drying from the top. This method causes rippling and is not able to achieve drug content uniformity as required by the claims. There are no fewer than five separate and distinct portions of the specification where the inventor stated that conventional drying methods will not result in uniform films. These include columns 3, 8, 9, 22, and 28. The most telling of all of these provisions is in column 28 that we've heard something about this morning, lines 57 to 58. The specification states at that point, and I quote, conventional convection air drying from the top is not employed. This portion of the specification goes on to state that conventional top-only drying is disclaimed because it leads to non-uniform films due to a rippling problem. There is another statement of disavowal in the specification. At column 22, lines 41 to 47, the specification provides that conventional drying techniques directed to the top surface of the film cause complications, including rippling, that leads to non-uniformity. There are other disclaimers in the specification as well. Columns 3, 8, 9, the specification further disparages conventional drying methods as unable to produce uniform films. Even in the description of the drawings in columns 7 and 8, there's a clear distinction between films dried by the conventional drying processes and those dried by the inventive drying processes. Taken together, these statements establish that drying methods matter. The inventors told the public that conventional top-air-only drying processes will not work to produce uniform films. And this is exactly what ALVGEN does. ALVGEN does what is disclaimed. Importantly, the specification does not describe a conventional top-air-only drying process that is able to achieve... What drying method is being used? Is it the combination of top and bottom? In the ALVGEN process, it uses a top-air-only drying process. The air enters the oven from the top, and that's the only source. It is not a combination of top and bottom air as suggested in an embodiment of the pattern. So ALVGEN only uses the top-air-only process, Your Honor. Does that answer your question? Well, that seems to be the question underlying the entire issue. There's a good deal of debate. And what's covered by the claims, but there's very little in terms of what's actually being used. There is no bottom-air, bottom-drying in ALVGEN's process. Maybe the factual, the district court found as a factual matter that ALVGEN does not affringe the asserted claims. The district court weighed testimony on this point, where, what was going on in the drying process. It heard testimony from both sides. And based on this record, it found that ALVGEN uses a conventional convection air-drying process, top-only air-drying process, to produce its film. The district court weighed that evidence and came to that conclusion. There is ample support in the record for that conclusion. In view of this testimony and evidence, the district court correctly concluded that Indivior failed to meet its burden of proof. Was it in combination with the viscosity of the system? Let me, I know that's been discussed at length, Your Honor. First, the claims. Claim 62 of the patent. Drying, this is at A369. Drying is a required step in the patent. It's not an alternative in Claim 62. Drying is there. Viscosity alone cannot control uniformity for films that must be dried. It's not a substitute for films that must be dried. The patent does disclose certain procedures, methods, hot melt extrusion for one, that does not involve drying. Plaintiffs acknowledge that in their brief, reply brief at 15. But there are wet-cast films described in the patent. That's what we're dealing with in this appeal, and that's what ALVGEN's process is, and that's what the claim is. Those processes require drying, and for those processes that require drying, the specification is clear that that drying cannot be by a conventional top air only method. The fact that viscosity may be able to achieve uniformity in a set of processes that do not involve drying does not change the fact that for processes that do involve drying, the claim processes, there is a clear disclaimer of conventional convection air drying from the top.  That's unclear. On the record, it's unclear, but I hear what you're saying. I'm not sure I follow you unclear in the sense that certainly it's clear that ALVGEN uses a conventional process. That's what the court found. The court actually found, as a matter of fact, that ALVGEN uses its own drying process, and that is a conventional process. That's part of the court's opinion. So as a matter of fact, there is no dispute that ALVGEN uses a conventional top air process that is its own drying process. At this point, let me turn to zone drying for a second. There's certainly been a lot of discussion from my friend about that. The disclaimer that we've mentioned, that I mentioned in columns 28 and 22, is unequivocal. There is no zone drying exception to this disclaimer. Maybe a bit about zone drying might help. Zone drying is not some magical, mystical thing. Zone drying is simply just adding separate sections to a drying process. You see this in the figures of the patent that show zone drying. This is figures 35 and 36, Your Honor, at 329 and 330. They're just simply boxes. They're additional drying zones. They meet the word. But the disclosure of zone drying does not describe what type of air is used. It does not describe whether it's air or microwave. It does not describe whether it's on the top or on the bottom. There is nothing in the zone drying description in the patent that suggests that conventional convection air drying from the top will work in such a process. The disclaimer applies, this disclaimer in column 28, applies whether it's a single zone or multiple zones. It's not the case that there's some exception to zone drying for those situations involving a zone dryer. The disclaimer is not limited to zone drying. Zone drying doesn't solve the rippling problem independently. I think my friend mentioned that zone dryers somehow do that. Rippling exists with a solely conventional air drying process from the top, and it makes no sense to think that somehow when you do a process more, you would avoid rippling. You do more in more zones would avoid the rippling. If you have a rippling problem in a single zone, you'd have it in a multiple zone process. Therefore, it's appropriate in our view to read this discussion of zone drying consistent with the disclaimer in the specification. And the prosecution reinforces this point. I should make that clear. The prosecution distinguished a reference, the Chen reference, on the fact that it is a zone dryer. They distinguished based on the drying methods. But it's clear that plaintiffs acknowledge at page 35 of their opening brief that the Chen reference is a zone dryer. So to say somehow that the zone drying section in column 32 of the patent undoes the prosecution makes no sense, that they disclaim a process that involves zone drying during the prosecution and should not now be permitted to somehow bring back in zone drying to something that's been disclaimed. There's been a discussion of Soli this morning. Let me touch on that, Your Honor. Soli was added to the claims during the DRL Markman proceeding, and this is at A20514, to read out an embodiment of the claims where there is both drying from the top and drying from the bottom. It does not limit the disclaimer to those processes that have no bottom drying whatsoever. The court found in its decision, the district court, that Elvigin's drying process is conventional. So whether or not the court applied its claim construction, let me put it that way, the court applied its claim construction and said Elvigin is a conventional convection top air process. Plaintiffs are basically attempting to construe the construction with Soli to somehow focus on a bottom drying component that may or may not occur in Elvigin's process. But the fact is clear that the district court weighed that evidence about Elvigin's process and determined that it is a conventional convection top air drying process. Certainly, Your Honor, I don't know if that makes sense, if you have a question on that point. The fact that Elvigin does not, the fact of the matter, I think counsel mentioned that there's some amount of bottom drying that goes on in Elvigin's process. The district court specifically found that bottom drying has not been shown to be controlled or substantial. The district court, this is at A17, said bottom drying is at most an insubstantial amount. So the fact that drying employs conventional convection air, any conventional convection air drying process will employ some drying from the bottom. That does not mean that Elvigin's process falls outside of the scope of the disclaimer. Certainly, the claim construction can't be read to bring in those conventional processes where there is a conventional amount of bottom drying, if at all. And in fact, again, the district court found the amount of bottom drying in Elvigin's process has not been shown to be controlled or substantial. It's at most, at most, insubstantial. Your Honor, we touched on the Indivier 1 decision, the prior DRL decision. Certainly, we believe that that decision supports disclaimer. In this particular situation, there's no reason on this specification, the same specification, to reach a different result. The zone drying discussion doesn't change this panel's decision in that case. Let me briefly touch on our cross appeal at this point. Elvigin's cross appeal is relevant, and we discussed this in our brief at length. Elvigin's cross appeal becomes relevant. Your Honor, only if this court adopts a different construction of the dry limitation. If the district court's construction is affirmed, there's no need to reach Elvigin's cross appeal. Elvigin followed the roadmap of Lazar Kaplan to preserve its invalidity defenses. In the event this court adopts a new and broad construction of dried, as the court has observed in cases like Assist Technologies and Johns Hopkins, the rules of the game change when a new construction is adopted. I just want to make sure the court knows that in the event that there is a reversal on the claim construction, that Elvigin is entitled to at least present some invalidity defenses. Again, that doesn't detract in any way from the main point of our appeal, and I believe that the claims need to be construed in a way that's consistent with the disclaimer. With that, let me reserve the rest of my time. I should say, if you have questions, I'll take them up. We'll save the rest of your time. I believe, Judge Newman, you asked whether Elvigin uses bottom drying? Yeah. This is discussed at the appendix at page seven, and there was a finding that it does use bottom drying, that it was not substantial, but that there was bottom drying. Basically, what Elvigin did, and this is not contested, it removed fuses from what's called a flotation dryer, where there's air that keeps the web afloat, the bottom of the oven, and as a result, the web drags along the bottom of the oven for certain periods of time and also touches hot drag bars. So there had to be bottom drying. The question is, the court said there's bottom drying below. The question is, is it finding that it's insubstantial? Does that matter given a claim construction and the scope of a disclaimer that uses the word solely? So I think that that's, at the end of the day, the issue there. There's not an issue of fact. It has to do with the scope of the disclaimer and whether this court gives meaning to the word solely, which the district court put in because of embodiments using both top and bottom air. I want to talk a little bit about rippling and zone drying. Rippling occurs when you dry the top of the film too quickly. This is explained in the patent, I believe, at Column 22, and there's also an earlier discussion which would be referenced in our brief. It dries it too quickly, so a zone dryer allows you to step up the drying process by changing the temperature from zone to zone. So Alvagen does that. It does it to avoid rippling. There was a finding that its process is designed to avoid rippling, and Column 32, in fact, says that this process avoids rippling. There it's called surface skinning. So all of this is explained clearly in the patent. I wanted to return to an issue of conventionality and this idea that if an old piece of equipment is used, then somehow it's part of something that's disclaimed. We heard that a Strohbusch reference taught bottom drying. What exactly is it that would be within the scope of the claims if all you do is hunt for some prior use of a drying technique? When the patents are composition claims, they're composition claims that meet a need for a uniform film. There was no sublingual film before this point in time because particulate matter couldn't be dried and processed and cast in a way in which uniformity would be preserved. And dried, in this composition claim, it's not even used in the claim as a process step. What it refers to, and you can see this when you look at Claim 62, it talks about the state of the matrix before casting or drying. So it's not the case that there's even a step here of drying. It's true that final cast films will be dried, but these are composition claims. And you can see this very clearly in Claim 62, which is the independent claim at issue. I want to just pose one question before my time is nearly up. Column 4, I pointed to the language clearly identifying an alternative to any type of control drying. We don't hear an answer about that. It can't be referring to extruded films because they don't require additional solvent. They aren't dried. They're cooled. And in Column 3, which I heard a long list, most of it's discussed. I think all of it in our brief about, in Column 3, about all of the shortcomings of conventional drying techniques, we didn't hear a word about what it says right below what was quoted to you. The conventional drying methods themselves are unable to provide uniform films. Drop down four lines to Column 20, to Line 20 of Column 3. Uniformity is particularly difficult to achieve via conventional drying methods with a relatively thicker film. This patent is focused on thin films. That's in the abstract, and there's a stated preference in Column 22 of the thickness of the films is less than about 380 microns, for example, less than about 250 microns. And while the claim that I've been talking about, Claim 62, doesn't recite thin films, it doesn't use the word thin films, it provides that the micron size be small enough so you can make a thin film. All you've got to do is follow the teachings of the patent, whether it's choosing the right polymers, a thickness of the film that's appropriate, or the other many, many teachings in this patent about how to control viscosity, the mixing process, and drying, and you'll end up with a uniform film. So it can't be the case that this patent disclaims any particular drying methods, and I don't think that there's any coherent scope that we've heard about what it is that would have been disclaimed. If there's no drying method that can be controlled, what's the basis for unobviousness? I'm sorry, Your Honor, you're asking? The larger basis for the patentability of this film. This was the first time that anybody had been able to master all of the different parameters that go into making a film. Earlier I pointed to a passage talking about interaction. It's about interaction of all of the different process steps, finding the right viscosity, and then knowing what to do with it going forward. So there's a recommendation on how to cast the film. That's the reverse roll casting process is said to reliably deliver films that are of a uniform thickness, particularly if you use a doctor blade. There are all kinds of parameters set forth, and the secondary literature, and this is something that's part of the other case that we pointed to, recites time and again the difficulties in obtaining uniform films. It has to do with particulate matter falling out, moving from side to side or from top to bottom. And this is particularly difficult if you're doing what, if you're making a continuous sheet of film, and then subsequently the film is being cut after it's cast and dried. So it's an extremely difficult process, and it provides ways of drying the film that will get the job done, including zone drying. It talks about the advantages of bottom drying, but it also talks about the importance of having the right viscosity, how to mix the film. It mentions vacuum mixing. All of this isn't described in passing. It's described in column after column, and that's why at the end of the day what was invented here was a composition that shouldn't be limited to making it any particular way. That's the law of this court in the Vanguard case. If you've got a composition claim, it's not limited to the way it's made. That's the by and large rule. It should be applicable here. There's no disclaimer, and any disclaimer couldn't possibly include a process that's recommended as a way to controllably dry. So if you're controllably drying, you're not going to have top air occurrence busting up the top level of the film. Zone drying is one of those ways to avoid that. So it couldn't possibly be the case that any disclaimer could provide a non-infringement defense to a company that follows the teachings of the patent and uses that zone drying process. Okay. Any questions? Any more questions? Any questions? Okay. Thank you. I didn't address the cross-appeal. I assume if you have questions or something. You've got two minutes after we hear from. Okay. Well, if Mr. Elkin didn't address it, then Mr. Smaller has nothing to rebut. I suppose that's true. We think we've rebutted everything in our papers. I've answered. Do you want to hear on the cross-appeal? No, I think we have that. Okay. In that case, the case is taken under submission. Thank you all.